**In the Matter of HAMIEL & SONS, INC., Debtor.**

**Bankruptcy No. 3–81–03254.**

United States Bankruptcy Court, S. D. Ohio, W. D.

May 28, 1982.

John Petzold, Dayton, Ohio, for debtor.

Peter J. Donahue, Dayton, Ohio, trustee for BancOhio.

Edmund J. Adams, Cincinnati, Ohio, trustee for Central Trust Co.

Frank Root, Dayton, Ohio, for Farmers Grain & Supply Ass'n.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### FINDINGS OF FACT

Hamiel & Sons, Inc. filed a voluntary petition under Chapter 11 of the Bankruptcy Code on 16 November 1981. Since 1950 this Debtor had engaged in the elevator, grain storage, seed and fertilizer business, which business activities had ceased prior to the filing of the Petition. On 18 November 1981 the schedules were filed, indicating that all corporate stock was owned by Lowell D. Hamiel and Herbert Hamiel. All the Corporate Officers were members of the family. BancOhio was listed as secured creditor for $765,779.00 secured by collateral with a market value of $750,000.00; and Central Trust Company, N. A. was listed as a secured creditor for $105,714.20 secured by collateral with market value of $139,-242.00. Unsecured creditors were scheduled in the total amount of $662,112.97, the Ohio Farmers Grain & Supply Association being practically the principal unsecured creditor in the amount of $498,557.87, other than Herbert Hamiel and Lowell D. Hamiel scheduled as holders of notes in the total amount of $104,673.02.

On 3 February 1982 the Debtor-in-possession filed a report as required by the Superintendency Order of the Court, indicating that "The Debtor in Possession has terminated all activities and presently all of the equipment and property under security watch for purposes of protecting the same from vandalism, theft and the like." The report also indicated, "That the Debtor by its officers and attorneys are in the process of negotiating for the sale of all assets of the business and that such negotiating in various areas are in preliminary stages and upon realization of a firm offer or the realization that no offer is forthcoming, the Debtor (Debtor in Possession) shall report to the Court regarding its activities." The report further indicates that no funds were presently in the hands of the Debtor-in-Possession and that no expenses had been incurred.

On 25 March 1982 Ohio Farmers Grain & Supply Association filed an application for appointment of Trustee. The applicant alleges *inter alia* that "... Debtor and its Officers, and shareholders have prior to the filing of the Chapter 11 proceeding conveyed and transferred virtually all of the business assets to Trustees for the Central Trust Company and BancOhio National Bank." A Declaration of Trust executed on or about 16 November 1981 forms the basis for such allegations and the terms thereof have not been denied or rebutted by any of the parties involved in the transfer.

It is further alleged that, "With the Debtor in Possession under the management and control of the officer and shareholder signatories ... clearly no investigation will be made as to potential liabilities of said officers and shareholders or the debts of debtor under the 'alter ego' doctrine or otherwise or whether the conveyance constitutes a possible fraud upon creditors as a fraudulent conveyance or otherwise."

The appointment of a Trustee was opposed by the Debtor, the Central Trust Company, and BancOhio National Bank, primarily on the basis that the expenses would be a prohibitive incursion upon the estate. It was further argued that the assets involved in the transfer were not property of the Chapter 11 estate and that the applicant, as a major unsecured creditor, could conduct on its own initiative any necessary investigation into prefiling business activities. Rather extensive documentation of transfers of assets and the "Declaration of Trust" were submitted with the Application for Appointment of Trustee. An extensive analysis of these documents would serve no purpose at the present time, except to note that the real property and fixtures utilized in the operation of the elevator, feed and fertilizer business by Debtor were transferred to these Trustees by Lowell D. Hamiel, Edna Hamiel, Herbert D. Hamiel and June E. Hamiel for the

benefit of the banks, as beneficiaries. Also a precursory examination of balance sheets indicate that these business assets were employed by the Debtor in business operations which are now purportedly to be sold for the benefit of creditors in the Chapter 11 case.

## DECISION

### I

The operative facts submitted are not extensive. The need asserted for the appointment of a trustee does not in any way implicate the corporate officers of debtor in claimed mismanagement or threats to the Chapter 11 estate occurring since the court jurisdiction was invoked. The business operations have been terminated and all indications point to a liquidation plan.

Furthermore, the reasons asserted by the Debtor and secured parties for opposing the appointment of a trustee (i.e., cost burdens) are very real and endemic.

Without laboring these obvious facts and implications, there are other factors to be addressed. First, there is no active Creditors' Committee, as such. Ohio Farmers Grain & Supply Association, the major unsecured creditor, instituted the request for the appointment of a Trustee, conformably to the statute, as a party in interest. 11 U.S.C. § 1104(a).

The secured creditors urge in essence that the grounds asserted for such an appointment are tenuous at best and that the costs should be born by the applicant (by pursuing the matter individually).

■ Even though it is axiomatic that a court must weigh cost/benefit considerations and a cost/protection analysis before the appointment of either a trustee or examiner, it is the opinion of this court that shifting the expense from the estate to an interested party is not a factor to be employed in deciding the need for an appointment; but rather, is only an end limitation. An obverse rationale would place the court in an untenable posture of favoring one contesting faction over another before a judicial determination of the ultimate issues. Hence, the request to shift the cost burdens to application must be summarily denied. Furthermore very serious questions of standing would then be posed. See decision by this Court *In Re Liberal Market, Inc.* 11 B.R. 742, 7 B.C.D. 451 (1981).

If such an appointment is necessary, the trustee or examiner then constitutes a court fiduciary and is amenable to no other purpose or interested party.

■ In conclusion, if the appointment of a trustee becomes unavoidable in the protection of parties in interest, the cost/protection factor must necessarily supercede a cost/benefit factor, even to the extent of a depletion of the estate. Such is one aspect and risk of invoking the Chapter 11 jurisdiction initially. Such a result is even more apparent in Chapter 11 cases bearing an acknowledged liquidation course, which might be exploited in an endeavor to avoid the ramifications of a Chapter 7 administration.

### II

By the same token, a precursory examination of the reasons asserted for appointment of a trustee does not obviate the tenuous and very complicated legal and factual issues posed herein. The application and attached exhibits strike to the very core of the estate, if any, available to unsecured creditors.

The allegations, if judicially determined, would establish in applicant's words that, "The Debtor, its officers, and shareholders have historically and consistently treated all buildings, equipment and apparatus situate on the real estate described in Exhibit "A," excepting parcels VII and VIII as property of the Debtor for all purposes. The conveyance of the real estate titled in the names of Debtor's officers and shareholders places the trustees named in Exhibit "A" in a position to claim that the building, equipment, and apparatus situated on the various parcels of real estate described in Exhibit "A" is not the property of Debtor and is not available to creditors in the event of adjudication or a liquidation.

The officers and shareholders of Debtor by executing the conveyances have effectively eliminated any possibility of Debtor proposing a plan of arrangement with its creditors.

The officers and shareholders by executing Exhibit "A" are personally relieved of any personal liability to BancOhio National Bank. The officers and shareholders have been thus advantaged to the detriment of Debtor's creditors. With the Debtor in possession under the management and control of the officer and shareholder signatories to Exhibit "A," clearly no investigation will be made as to potential liabilities of said officers and shareholders or the debts of Debtor under the "Alter Ego" Doctrine or otherwise or whether the conveyance constitutes a possible fraud upon creditors as a fraudulent conveyance or otherwise.

An investigation of the transaction hereinabove referred to, including the relationship between Debtor and its shareholders and officers and all other matters relative to this proceeding is necessary and may only be accomplished by a person with the independence and powers of a trustee."

Inasmuch as the estate is not now being wasted or depleted, under the control of the Debtor in Possession, a cost/benefit analysis negates the claim the purpose asserted "may only be accomplished by a person with the independence and powers of a trustee." Judicial caution dictates that an intermediate procedure be first explored, delaying the appointment of a trustee until a more mature investigation can be conducted of the allegations of misconduct, mismanagement, or irregularity in the management of the officers of the debtor; and, an examiner should be appointed to conduct such an investigation as is appropriate in the interests of unsecured creditors conformably to 11 U.S.C. § 1104(b).

ORDERED, ADJUDGED AND DECREED that the request for appointment of a trustee should be and is denied, until further order herein.

ORDERED that Ira Rubin is hereby appointed as Examiner, conformably to the statutes in such cases made and provided.