In the Matter of BALDWIN UNITED CORPORATION, D.H. Baldwin Company, et al., Debtors.

Bankruptcy No. 1–83–02495.

United States Bankruptcy Court, S.D. Ohio, W.D.

Jan. 31, 1985.

See also 43 B.R. 888.

Robert J. White, Linda Smith, O'Melveny & Myers, Los Angeles, Cal., for debtors.

David C. Greer, Bieser, Greer & Landis, Dayton, Ohio, for Examiner.

Gene Mesh, Cincinnati, Ohio, for the *Stoller* plaintiffs.

## ORDER

RANDALL J. NEWSOME, Bankruptcy Judge.

These Chapter 11 cases are before the Court pursuant to a motion filed by Gene Mesh, counsel for the plaintiffs in *Stoller v. Baldwin-United Corporation, et al,* Civil Action No. C–1–82–1438, a securities fraud class action pending in the United States District Court for the Southern District of Ohio, Western Division. This motion seeks an order from this Court requiring the Court-appointed Examiner in these cases, Mr. David Greer, to preserve documents and other investigative materials which have come into his possession during the course of his investigation into the Debtors' affairs. Memoranda in opposition to this motion have been filed by O'Melveny & Myers, bankruptcy counsel for the Debtors, and by Frost & Jacobs, special counsel for the Debtors. Mr. Greer has also filed comments and suggestions regarding this motion.

A review of the events which led to the appointment of the Examiner and the tailoring of the scope of his assignment is necessary to put this motion into its appropriate context.

On September 29, 1983, counsel for the *Stoller* plaintiffs filed a motion in this Court seeking the appointment of an equity security holders' committee and the appointment of Gene Mesh as Examiner pursuant to 11 U.S.C. § 1104. The proposed duties of the Examiner were to identify any "fraud, dishonesty, incompetence, misconduct, mismanagement or irregularity in the management of the affairs of the Debtors . . . during the period beginning December 14, 1981" through the filing of these Chapter 11 proceedings. Official Court File ("OFC"), Document 40.

This motion was first discussed at the October 17, 1983 status conference in these cases. The Debtors and other parties indicated a need for further consideration of the appropriate scope of the examiner's duties. The Court denied Mesh's motion to the extent that he sought to have himself appointed Examiner, citing serious conflict of interest questions. While the Court indicated its intention of appointing an Examiner, all parties were given 20 days in which to file memoranda regarding the appropriate scope of the examiner's duties and suggestions as to who the Examiner should be. October 17, 1983 Tr. 92–107.

The subject of the Examiner and his duties was again discussed at the November 11, 1983 status conference. Having received no nominations for the position, the Court announced its decision to appoint Greer as Examiner. The Debtors had tendered a draft of a proposed order appointing the Examiner and detailing his duties on November 10. Being advised that additional time was needed to finalize this order, all parties were given an additional 30 days to submit memoranda on the question. November 11, 1983 Tr. 1–10.

On November 21, 1983 the Debtors served all parties on the most recent master service list in these cases with a proposed order upon which the Debtors and creditors' committees had agreed. The Court's records indicate that Mesh was among those served. OCF, Document 212. That order limited the Examiner's duties to those originally envisioned by Mesh and

this Court. It also contained the following language:

ORDERED, that the Debtors shall grant the Examiner access to all information, (including documents) in the possession of or under the control of the Debtors which, in the judgment of the Examiner, is relevant to his investigation of the matters set forth above. For the limited purpose of performing his duties pursuant to Sections 1106(b) and 1106(a)(3) and (a)(4) of the Bankruptcy Code, the Examiner shall have the same rights with respect to privilege as a trustee appointed under the Bankruptcy Code, and such access shall not be deemed to be disclosure to a third party or. a waiver of any privilege or right by the Debtors; and it is further

ORDERED, that except as otherwise ordered by the Court after notice and a hearing, the Examiner shall not disclose the contents of any privileged document to any third party, except as the Examiner determines such disclosure is necessary in his statement of investigation required pursuant to § 1106(a)(4) of the Bankruptcy Code. Such disclosure shall not be deemed to be a waiver of any privilege or right of the Debtors; and it is further

ORDERED, that except as otherwise ordered by the Court after notice and a hearing, nothing contained herein shall require the Examiner to disclose to any person the Examiner's statement of investigation, or any part thereof, prior to filing such statement pursuant to Section 1106(a)(4) of the Bankruptcy Code. Except as otherwise ordered by the Court after notice and a hearing, the Examiner shall not be required to disclose to any person, other than the Debtors, the Securities and Exchange Commission and any official committee of creditors or equity security holders appointed in these cases, the information reviewed in connection with his investigation; . . .

No objections to this proposed order were filed by the *Stoller* plaintiffs or anyone else; nor were any objections raised at

the December 14, 1983 status conference. With only one minor modification, the proposed order was adopted and signed by the Court during that conference. December 14, 1983 Tr. 20–21; OCF, Document 250.

While the Court intentionally avoided any inquiry into the specific details of Greer's investigation over the ensuing months, we are aware that he and his staff reviewed many documents in the possession or control of the Debtors and other third parties. The Examiner was given free access to these documents in reliance upon his assurances that the order appointing him and his status as an investigatory arm of this Court would serve to shield them from disclosure to others and from the threat of waiving any applicable privilege. While the task assigned to the Examiner was colossal enough, we are confident that it would have been even more difficult, if not impossible, had he been denied access to documents for lack of such assurances. We also do not doubt that his January 14, 1985 report and "snapshot" chronology of events could not have been prepared in such a superior fashion without complete and total access to information in the hands of third parties.

While counsel for the *Stoller* plaintiffs has assured this Court that the present motion seeks only a preservation of the documents presently in the Examiner's possession, their motion, as well as statements made to the District Court during a pretrial conference in the *Stoller* action, leave little doubt that they will at some point seek to require the Examiner to turn over some or all of the documents and other information which he has obtained through his investigation, notwithstanding this Court's December 14, 1983 Order, and notwithstanding their failure to object to that Order.

We are not unsympathetic to the *Stoller* plaintiffs' desire to fulfill their discovery needs through the least burdensome and least expensive means possible. Certainly the Examiner's file drawers offer a most enticing alternative to the long and bloody battles which plaintiffs' counsel often face in the discovery phase of securities litigation. However, while we have always hoped that the Examiner's report and chronology would provide a useful tool for all parties in the many proceedings pending against the Debtors, we never contemplated, nor in our opinion does the Bankruptcy Code contemplate, that the Examiner act as a conduit of information to fuel the litigation fires of third-party litigants. The prospect of an Examiner being required to indiscriminately produce investigative materials obtained through promises of confidentiality and reliance upon this Court's orders raises grave concerns touching both the integrity of the Bankruptcy Court's processes, as well as the integrity of the statutory position of the Examiner.

These concerns are highlighted by the unique nature of the position itself. An Examiner's legal status is unlike that of any other court-appointed officer which comes to mind. He is first and foremost disinterested and nonadversarial. The benefits of his investigative efforts flow solely to the debtor and to its creditors and shareholders, but he answers solely to the Court. As was noted in *In re Hamiel & Sons, Inc.*, 20 B.R. 830, 832 (Bankr.S.D. Ohio 1982), an examiner "constitutes a Court fiduciary and is amenable to no other purpose or interested party."

While § 1106 requires the Examiner to file a "statement" of his investigation, his findings do not have the binding effect on the Court or parties of those of a special master, arbitrator or magistrate; nor do they have the evidentiary character of an opinion by a Court expert appointed pursuant to Rule 706 of the Federal Rules of Evidence. An Examiner performs the investigative duties of a trustee, and may perform other trustee duties as the Court directs, but he stands on a different legal footing than a trustee. This is borne out inferentially at least by § 1109, which fails to include Examiners in the list of parties in interest who "may appear and be heard on any issue in any case under this Chapter."

The Examiner in this case has aptly characterized his duties as comparable to that

of a "civil grand jury ... to ascertain legitimate areas of recovery and appropriate targets for recovery." OFC, Document 1453 at 4. If Examiners in other cases are to perform these "civil grand jury" functions effectively, and if their nonadversarial role is to be maintained, they and the subjects of their investigation must be unhampered by the threat that any information which comes into the Examiner's hands will be fair game for a plethora of anxious litigants, regardless of the limitations on disclosure which the Bankruptcy Court has imposed. Even absent such limitations on disclosure, we believe that the Examiner, as a nonparty to any proceeding and a nonadversarial officer of the Court, is entitled to some immunity from the whirlwind of litigation commonly attendant to large Chapter 11 cases.

The issue of disclosure of the Examiner's investigative materials is not presently before this Court, and may never be before this Court. We suspect that the District Court will have the thoroughly unenviable task of deciding this issue as the *Stoller* case progresses. Until instructed otherwise, however, this Court intends to follow and enforce the terms of its Order of December 14, 1983.

■ To insure that the decision-making processes of the District Court are not compromised, the Court hereby issues the following ORDER pending further proceedings which may transpire on the issues raised herein:

1. The Examiner shall maintain and preserve all documents and other materials received or generated by him during his investigation which are not subject to a claim of privilege by any person or entity, pending further Order of this Court or the United States District Court for the Southern District of Ohio.

2. The Examiner shall make a list of each and every document or other item in his possession which is subject to a claim of privilege by another person or entity, and shall briefly summarize and/or describe the contents of each such document or item. Documents or items which came into the Examiner's possession from such person or entity, and which are subject to a claim of privilege, shall be returned to that person or entity.

3. The Examiner shall not disclose, identify, or produce any document or item in his possession which was obtained or generated pursuant to or in connection with his investigation in these cases to any other person or entity without the approval of this Court or the United States District Court for the Southern District of Ohio. This prohibition shall extend to the list and summary of privileged documents to be prepared by the Examiner.

IT IS SO ORDERED.