**In re SUNCRUZ CASINOS, LLC**
**Jab America, Inc., Debtors.**

Nos. 01–24661–BKC–PGH,
01–24662–BKC–PGH.

United States Bankruptcy Court,
S.D. Florida.

Sept. 5, 2003.

Arthur H. Rice, Esq, Miami, FL, for debtors.

Robert M. Abramson, Scott Baena, Miami, FL, Michael R. Bakst, L. Louis Mrachek, West Palm Beach, FL, Jim H. Boyd, Fayetteville, AR, Ladd C. Brown, Plantation, FL, Guy E. Burnette, Jr., Tallahassee, FL, Vaughn A. Carney, Colchester, VM, Stephen F. Chiccarelli, Baton Rouge, LA, Rob T. Cook, Islamorada, FL, Allison R. Day, Miami, FL, Louis T. DeLucia, Princeton, NJ, Charles H. Dittmar, Tampa, FL, Theodore R. Doran, Aaron R. Wolfe, Daytona Beach, FL, Aurelio Durana, Coral Gables, FL, Max G. Factor, Tallahassee, FL, Manuel Farach, West Palm Beach, FL, Wendell Finner, Jacksonville Beach, FL, James L. Fly, Richard A. Robinson, Orlando, FL, R. Mark Fore, Lakeland, FL, John H. Genovese, Luis Salazar, Miami, FL, Michael I. Goldberg, Douglas R. Gonzales, Marc J. Gottlieb, Bryan S. Greenberg, Beth–Ann E. Herschaft, Robert L. Jennings, Andrew H. Kessler, An-

drew D. Zaron, Ft. Lauderdale, FL, Robert C. Gross, Robert Harris, Miami, FL, M. Lewis Hall III, Sarasota, FL, Eric L. Hearn, Jacksonville, FL, Fredrick C. Heidgerd, Deerfield Bch., FL, Andrew B. Hellinger, Miami, FL, Shari L. Heyen, Houston, TX, Roman B. Hirniak, Princeton, NJ, L. Joseph Hoffman, Coral Gables, FL, Alejandro F. Hoyos, Jefferson P. Knight, John W. Kozyak, Miami, FL, Claudio E. Iannitelli, Phoenix, AZ, Camille J. Iurillo, Dennis J. LeVine, Patrick T. Lennon, Jacob J. Munch, Laura E. Prather, Hendrik Uiterwyk, Tampa, FL, Mitchell E. Jacobs, Robert C. Meyer, Steven Mishan, Mindy A. Mora, Daniel Morman, Timothy J. Norris, Arthur R. Rice, Miami, FL, James O. Johnston, Los Angeles, CA, Kenneth M. Jones, Plantation, FL, Daniel J. Leeper, St. Petersburg, FL, Anthony Leon, Tarpon Springs, FL, Steven N. Lippman, Thomas J. McCausland, Thomas M. Messana, Arthur C. Neiwirth, Ivan J. Reich, Reggie David Sanger, Patrick S. Scott, Ft. Lauderdale, FL, Corali Lopez–Castro, Miami, FL, John A. Moffa, Sunrise, FL, Will Murphy, Margaret Villella, Hollywood, FL, C. Robert Murray, Coral Gables, FL, Larry Mark Polsky, Daytona Beach, FL, Nicholas V. Pulignano Jr., Chad S. Roberts, Jacksonville, FL, Jonathan I. Rothstein, Daytona Beach, FL, David R. Softness, Robert E. Stone, Walter J. Tache, Andrew L. Waks, Miami, FL, Stephen M. Weinstein, Hollywood, FL, for creditor.

Jessica L. Wasserstrom, Miami, FL, for trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW GRANTING MOTIONS FOR APPOINTMENT OF CHAPTER 11 TRUSTEE

PAUL G. HYMAN, JR., Bankruptcy Judge.

**THIS MATTER** came before the Court for evidentiary hearing on July 11, 2003 and on August 14, 2003, upon Foothill Capital Corporation and Citadel Equity Fund Ltd.'s (collectively, the "Secured Lenders") Motion For Appointment of Chapter 11 Trustee, Secured Lenders' Supplement to Motion For Appointment of Chapter 11 Trustee filed with leave of the Court, Jack Abramoff's ("Abramoff") Joinder In Support of Motion For Appointment of Chapter 11 Trustee (the "Joinder"), and the United States Trustee's Renewed Motion To Appoint Chapter 11 Trustee (collectively, the "Trustee Motions"). The Trustee Motions were opposed by the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), and the "Boulis Group" which consists of GKB Holdings, LLC ("GKB"), Dream USA, Inc., Dream Boat, Inc., Dreamcruz, Inc., Mr. Lucky's Excursions, Inc., Dream Cruz II, Inc., Tropic Casino Cruises, Inc., 3514 So. Ocean Drive, Inc., and SunCruz Casino, Ltd. Memoranda in opposition to the Trustee Motions were filed by the Committee and by the Boulis Group, but not by the Debtors.

The Secured Lenders and the Debtors presented testimonial and documentary evidence at the hearing on the Trustee Motions. The Court accepted the Secured Lenders' Supplement at the August 14th hearing, and thereupon offered Debtors the opportunity to present further evidence at a later date. At the conclusion of each side's case in chief, Debtors declined the Court's offer to present further evidence at a later date. Thus, the record of this cause is complete and closed.

The Court having considered the Trustee Motions, the papers filed in opposition, the evidence presented, the matters for which the Court has taken judicial notice, the record in this case, the argument of counsel, and having heard and observed

the demeanor of the witnesses, and being otherwise being fully advised in the premises, enters the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FINDINGS OF FACT

The Debtors own and operate a gambling cruise business which does business under the registered trade name "Sun-Cruz." SunCruz was founded by Konstantinos "Gus" Boulis ("Boulis"), who owned the business through a number of entities he controlled.

As part of a settlement with the United States Attorney's office, Boulis was forced to divest himself of SunCruz. Thus on or about September 21, 2000, the Boulis Group entered into an Asset Purchase Agreement ("APA") with the Debtors which were organized by Adam Kidan ("Kidan") for the purpose of acquiring the SunCruz assets from the Boulis Group. Pursuant to the APA, the Debtors agreed to purchase substantially all of the assets of SunCruz from the Boulis Group for a total purchase price of $147.5 million. Under the APA, Shake Consulting, LLC ("Shake"), another Boulis-controlled entity, retained a 10% ownership interest in the Debtors.

To finance the purchase of the SunCruz assets, the Secured Lenders lent the Debtors more than $60 million in senior secured financing. As part of the purchase, Kidan was required to make an equity contribution of $23 million. Although Kidan provided documentation to the Secured Lenders that he had made that payment to the Boulis Group, he in fact had not made the payment. The bulk of the remaining purchase price was financed with $67.5 million in subordinated seller financing by the Boulis Group pursuant to two notes: a Mezzanine Note in the amount of $30 million, and a Seller's Note in the amount of $37.5 million (collectively the "Seller Loans"). The Secured Lenders maintain that, pursuant to an Intercreditor and Subordination Agreement concurrently executed with the Debtors and the Boulis Group (the "Subordination Agreement"), the Seller Loans are subordinated to the prior payment in full of the Secured Lenders' loans.

Shortly thereafter, the Boulis Group and the Debtors became embroiled in litigation over the sale. At the time the Debtors filed bankruptcy, there were a number of separate lawsuits pending in both state and federal courts involving the Boulis Group, Shake, the Debtors, and Kidan.

In February 2001 Boulis was murdered. Ace Blackburn ("Blackburn") was appointed to serve as one of the curators of the Boulis probate estate (the "Boulis Estate"). The Boulis Estate intervened in at least one of the lawsuits pending against Kidan and sought a permanent injunction against the Debtors to prevent them from using the "SunCruz" name based on allegations that the Debtors failed to pay the purchase price due the Boulis Group under the APA.

The Debtors filed a voluntary petition in bankruptcy on June 25, 2001. Shake filed an Emergency Motion to Designate Responsible Manager or Party to Perform the Duties and Exercise the Rights of the Debtor in Possession (the "Designation Motion"), in which Shake claimed to have acquired sufficient consents of the other Sun Cruz LLC members to oust Kidan as manager.

The Secured Lenders also filed an Emergency Motion for Appointment of Chapter 11 Trustee. This Motion was based upon the bitter contest between the Boulis Group and Kidan for control of the Debtors (and the assets of the Debtors),

and upon the numerous allegations of fraud and improper conduct leveled by each party against the other. The Secured Lenders contended that the litigation between Kidan and the Boulis Group provided clear evidence of parties protecting and advancing their own interests without regard for the ultimate well-being of the Debtors. Moreover, the Secured Lenders argued that the pre-bankruptcy litigation between Kidan and the Boulis Group produced documentary and testimonial evidence of improper conduct by both sides that would constitute cause for the appointment of a trustee.

Shake filed its own motion for the appointment of a trustee "for cause" under 11 U.S.C. § 1104(a)(1), based upon sweeping allegations of fraud and gross mismanagement of the Debtors by Kidan (the "Shake Trustee Motion"). Two other groups—Paradise of Port Richey, Inc. ("Paradise of Port Richey") (of which, as described below, the Boulis Estate was an owner) and the so-called "La Cruise Group"—also filed motions for the appointment of a trustee.

A hearing on the various motions for appointment of a trustee was scheduled for July 12, 2001. At a status conference on July 9, 2001, Shake, the Boulis Estate, Kidan, and the Debtors unexpectedly announced that they had entered into a settlement ending their dispute for control of the Debtors and resolving the Shake Trustee Motion. Later that same day, the Debtors, Kidan, Shake, KB Casinos, Inc. ("KBC"), GKB and the Boulis Estate filed and served their Motion to Approve Settlement which sought the Court's approval of a Settlement Agreement among the Debtors, Shake, Kidan and KBC dated July 8, 2001, and approval of a separate Agreement of the same date among Shake, the Sellers (as defined in the Agreement),

GKB, KBC, the Boulis Estate and Kidan (collectively, the "Settlement").

For purposes of this Order, the material terms of the Settlement included the following: (a) Kidan's equity interest in the Debtors would be transferred to KBC, a newly formed entity controlled by the Boulis Estate with Blackburn as its Manager; (b) Kidan and his management team would cease to manage the Debtors (with Kidan and David Hughes receiving cash payments from the Debtors' estates in the aggregate amount of $255,000); and (c) Boulis-owned KBC (with Blackburn as its Manager) would assume complete control of the Debtors.

After a hearing, the Court approved the Settlement because the Settlement enabled the Debtors to proceed towards reorganization without the further distraction and expense of litigation (the "Settlement Order"). Accordingly, the Boulis Estate was vested with control over the Debtors.

The Secured Lenders appealed the Settlement Order to the District Court which affirmed the Settlement Order. Thereafter, the Secured Lenders appealed to the Eleventh Circuit. In a decision dated April 2, 2003 (the "Eleventh Circuit Opinion"), the Eleventh Circuit reversed and remanded with instructions to vacate the Settlement Order, and to consider the motions for the appointment of a trustee which the Settlement had rendered moot. Among other things, the Eleventh Circuit stated that "the Boulis Group has a conflict of interest sufficient to prevent it from serving effectively in a fiduciary capacity as the management of the debtor Sun-Cruz." (Eleventh Circuit Opinion, p. 8).

Based on the Eleventh Circuit Opinion, the Secured Lenders filed an Emergency Motion For Appointment of Chapter 11 Trustee on April 8, 2003. At a hearing conducted on April 16, 2003, the Court

denied the motion without prejudice because the Eleventh Circuit's mandate had not issued, and because the Debtors had filed, or were about to file, a petition for rehearing *en banc* thus forestalling the immediate issuance of the mandate.[1] However, the Court made it clear at the hearing that it would entertain a new motion for the appointment of a trustee when the mandate issued.

On May 30, 2003, the Eleventh Circuit denied the Debtors' petition for rehearing *en banc*. On June 9, 2003, the Eleventh Circuit issued its mandate in respect of its April 2 decision. As a consequence, the Eleventh Circuit Opinion—including the Eleventh Circuit's direction to consider the appointment of a trustee—became final and binding. On June 11, 2003, the Secured Lenders and the United States Trustee renewed their motions for appointment of a trustee. A hearing on those motions began but was not concluded on July 11, 2003. Following that hearing, the Court instructed the Secured Lenders to file a supplement to their Renewed Motion if the Secured Lenders wished to proceed on any grounds for appointment of a trustee not stated in the Renewed Motion. The Supplement filed by the Secured Lenders, among other things, expressly incorporated their original Motion to Appoint Trustee filed June 29, 2001. The Court treated the Supplement as a motion for leave to file the same and granted that motion, thus formally bringing the Secured Lenders' original motion before the Court, thereby fulfilling the Eleventh Circuit's directive that the Court consider the original motion which had been rendered moot by the Settlement Order. Abramoff filed his Joinder in the Secured Lenders' motion on August 12, 2003.

The hearing continued and was concluded on August 14, 2003. The Court finds that the Secured Lenders amply demonstrated that the Boulis Estate and its affiliated entities have numerous adverse, potentially adverse, and conflicting relationships to the Debtors' estates. Due to their current position of control and management of the Debtors, the Boulis Estate's conflict of interests include the following:

1. The Boulis Estate asserts secured claims against the Debtors for $67.5 million pursuant to the Seller Notes;

2. The Boulis Estate asserts an unsecured claim against the Debtors for $6 million;

3. The Boulis Estate is the sole shareholder of the corporate owners of the dock and parking lots in Hollywood, Florida that the Debtors sublease for one of their principal operations. The Debtors claim that their rights to use the dock and parking lots in Hollywood are one of their most valuable assets having "a value in excess of $8,000,000";

4. The Boulis Estate asserts that the sublease under which the Debtors lease the Hollywood dock is void or voidable. Moreover, the Boulis Estate has sought to evict the Debtors' sublessor from the dock;

5. The Boulis Estate claims to own the trade name "SunCruz," which the Debtors assert has "a value of $12,000,000." Prepetition, the Boulis Estate sued the Debtors for infringement—and for rescission of any rights to use the "SunCruz"

---

1. The Office of the United States Trustee also filed a motion for the appointment of a trustee but withdrew the motion just prior to the hearing because of the absence of a mandate.

In doing so, the United States Trustee expressly preserved its right to renew its motion after the mandate issued.

trademark—based upon the Debtors' alleged defaults under the APA;

6. The Boulis Estate is a 50% shareholder in Paradise of Port Richey which filed a substantial disputed claim against the Debtors. Paradise of Port Richey is potentially one of the largest general unsecured creditors in these cases;

7. Boulis was the ultimate grantor of the trust that owns Shake, which in turn owns a 20% membership interest in Debtor SunCruz Casinos, LLC ("SunCruz"). Shake has demanded that Debtors pay any tax withholding required in respect of Shake's allocable share of taxable income from SunCruz. If Debtors realize income upon discharge of debt, or upon forgiveness of debt in connection with a plan of reorganization, this tax withholding could amount to millions of dollars;

8. KBC (owned by the Boulis Estate) indemnified Debtors for the monies paid by Debtors to Kidan and David Hughes, as part of the Settlement which was approved by the Settlement Order. As a consequence of the Eleventh Circuit Opinion reversing the Settlement Order, the $255,000 paid to Kidan and Hughes is now due from KBC to the Debtors' estates;

9. While under the control of Kidan, the Debtors filed a substantial claim against the Boulis Estate. Blackburn and the other curators of the Boulis Estate filed an objection to the Debtors' claim. By the terms of the objection, a response was required to be filed within thirty days, failing which the objection would be sustained. By the date of the curators' objection, Blackburn—through KBC—was managing the Debtors. The Debtors did not file a response to the objection. Blackburn recently instructed the Debtors' counsel to cede all responsibility for claims against the Boulis entities to the Committee. It is unclear whether the Committee is now precluded from pursuing claims against the Boulis Estate, or whether Blackburn has any liability to the Debtors' estates for his action on behalf of the Boulis Estate and his inaction on behalf of the Debtors' estates;

10. The Committee has sued the Boulis Group for recovery of fraudulent conveyances and equitable subordination;

11. The Boulis Estate has caused the Debtors to propose a plan by which the Boulis Estate will realize all of the equity in the reorganized enterprise despite the fact that creditors are not being paid in full. As "new value" provided for that equity, the Boulis Estate proposes to contribute their alleged rights to use of the trade name "SunCruz" and to enter into new, market value leases for the Hollywood dock and parking lots for a term of not less than three years. In recognition of the fact that Blackburn and the Boulis Estate would have a conflict negotiating the new lease for both sides, Blackburn directed Debtors' counsel to cede responsibility for the lease negotiations to the Committee. It is the position of the Boulis Estate that failing confirmation of the plan, they will seek to prevent Debtors' use of the trade name "Sun Cruz", terminate the lease, and evict the Debtor from the dock and parking lots.

While the Court finds that the above relationships present sufficient conflicts of

828

interest for the Boulis Estate to be removed from Debtors' management, the Court does not agree with the Secured Lenders assertion that Debtors failure to file their 2000 and 2001 federal income tax returns was motivated solely by an intent to benefit the Boulis Estate and Shake. Based on the testimony of the Debtors' tax attorney, the Court finds that the delay in filing the tax returns was motivated by uncertainty in the federal tax laws and the belief that such delay would benefit the Debtors cash flow.

The Secured Lenders also argued that the Debtors improperly increased the rate for leasing Sun Cruz's vessels from JAB America, Inc. Again, the Court finds that the increase in the lease rate was motivated by a desire to decrease the Debtors' tax obligations, rather than by any improper motive to benefit the Boulis Estate.

### CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### A. 11 U.S.C. § 1104(a) Standards for Appointing A Trustee

 "There is a strong presumption in Chapter 11 cases that the debtor-in-possession should be permitted to remain in control of the corporation absent a showing of need for the appointment of a trustee." *In re Intercat, Inc.*, 247 B.R. 911, 920 (Bankr.S.D.Ga.2000)(*citing* 7 LAWRENCE KING, COLLIER ON BANKRUPTCY § 1104.02 (15th Ed.1998)). This presumption is based upon the belief that the debtor in possession is most knowledgeable about, and best able to run, the business of the debtor. *Id.* Consequently, the appointment of a trustee should be the exception rather than the rule. *In re Sharon Steel Corp.,*

871 F.2d 1217, 1225 (3rd Cir.1989). "Nevertheless in the appropriate case, the appointment of a trustee is a power which is critical for the Court to exercise in order to preserve the integrity of the bankruptcy process and to insure that the interests of creditors are served." *In re Matter of Intercat, Inc.,* 247 B.R. 911, 920 (Bankr. S.D.Ga.2000).

Section 11 U.S.C. § 1104(a) provides two alternative grounds for appointing a trustee. Section 1104(a) states in pertinent part:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause ...; or

(2) if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate ...

Subsection (a)(1) mandates that a court "shall" appoint a trustee for cause. The subsection provides a nonexhaustive list including, fraud, dishonesty, incompetence, or gross mismanagement, as conduct warranting appointment of a trustee for "cause". As alternative grounds for appointment of a trustee, subsection (a)(2) requires appointment of a trustee if such appointment is in the best interests of the creditors, equity security holders, and other interests of the estate.

 Once the court finds that cause exists under § 1104(a)(1), there is no discretion; an independent trustee must be appointed. *In re Oklahoma Refining*

*Company,* 838 F.2d 1133, 1136 (10th Cir. 1988). *Cf. Committee of Dalkon Shield Claimants v. A.H. Robins Co.,* 828 F.2d 239, 242 (4th Cir.1987) (determining that the court's discretionary authority is necessary to determine if the "conduct shown rises to a sufficient level to warrant the appointment of a trustee.") "Unlike subsection (a)(1), § 1104(a)(2) may well, entail the exercise of a spectrum of discretionary powers and equitable considerations, including a cost-benefit analysis, to determine whether the appointment of a reorganization trustee would be in the interests of creditors, equity security holders and other interests of the estate." *In re V. Savino Oil & Heating, Inc.,* 99 B.R. 518, 525 (Bankr. E.D.N.Y.1989).

Although the statute is silent on the issue, the legislative history of section 1104(a) discusses the use of a cost/benefit analysis in determining whether to appoint a trustee. The legislative history of section 1104(a) as discussed in the Notes of Committee on the Judiciary, House Report No. 95–595 states in part:

> Subsection (a) of this section governs the appointment of trustees in reorganization cases. The court is permitted to order the appointment of one trustee at any time after the commencement of the case if a party in interest so requests. The court may order appointment only if the protection afforded by a trustee is needed and the costs and expenses of a trustee would not be disproportionately higher than the value of the protection afforded.

> \* \* \* \* \* \*

The second test, relating to the costs and expenses of a trustee, is not intended to be a strict cost/benefit analysis. It is included to require the court to have due regard for any additional costs or expenses that the appointment of a trustee would impose on the estate.

> House Report No. 95–595, U.S.Code Cong. & Admin.News 1978, pp. 5963, 6358–6359.

The cost/benefit analysis is particularly germane to a Court's exercise of its broad discretion to appoint a trustee under section 1104(a)(2). *In re Cardinal Industries,* 109 B.R. 755, 766 (Bankr. S.D.Ohio 1990)(" If appointment is ordered pursuant to the Court's general equitable powers under § 1104(a)(2), the cost of a trustee to the estate, when compared with the benefit sought to be derived, will be a significant aspect of that determination.") In contrast, "[i]f the appointment of a trustee becomes unavoidable in the protection of parties in interest, the cost/protection factor must necessarily supercede a cost/benefit factor, even to the extent of a depletion of the estate." *Matter of Hamiel & Sons, Inc.,* 20 B.R. 830, 832 (Bankr. Ohio, 1982). *See also V. Savino Oil,* 99 B.R. at 528 ("a cost/benefit analysis under 11 U.S.C. § 1104(a)(1) is inappropriate.")

**B. The Boulis Estate's Conflicts of Interest Constitute Cause for Appointing a Trustee**

"A trustee in bankruptcy is the 'representative of the estate.' In a chapter 11 case, the debtor in possession ('DIP') has all the rights and powers and shall perform all the functions and duties of a trustee. 11 U.S.C. § 1107." *In re Microwave Products of America, Inc.,* 102 B.R. 666, 671 (Bankr.W.D.Tenn.1989). "Chief among these ... is that the debtor in possession is a *fiduciary* to all of its creditors and equity security holders." *In re Bellevue Place Assoc.,* 171 B.R. 615, 623 (Bankr.N.D.Ill.1994). "Because the DIP's fiduciary obligation is to the estate, and not to one group, the DIP must act to benefit the estate as a whole." *In re*

*Microwave Products,* 102 B.R. at 671. "[A] fiduciary—the debtor in possession— is proscribed from acting solely in its self interest to the exclusion of the other interests which the debtor in possession has the fiduciary obligation to protect." *In re Bellevue,* 171 B.R. at 624. Fiduciary obligations include the duty of loyalty and good faith which forbid "directors and other business operators from using their position of trust and control over the rights of other parties to further their own private interest, either by usurping opportunities, holding undisclosed conflicts, or otherwise exploiting their position." *In re Microwave Products,* 102 B.R. at 672.

> The willingness of Congress to leave a debtor in possession is premised on the expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee. And if the debtor in possession defaults in this respect, Section 1104(a)(1) commands that the stewardship of the reorganization effort must be turned over to an independent trustee." *In re Marvel,* 140 F.3d 463, 474 (3d Cir.1998)(*quoting V. Savino Oil,* 99 B.R. at 526).

■ Determinations to appoint a trustee pursuant to Section 1104(a)(1) are fact intensive. *In re Bellevue,* 171 B.R. at 622. In addition to Section 1104(a)(1)'s enumerated examples of conduct constituting cause—fraud, dishonesty, incompetence or gross mismanagement—courts have found cause to appoint a trustee based on the following factors:

1) Materiality of the misconduct;

2) Evenhandedness or lack of same in dealings with insiders or affiliated entities vis-a-vis other creditors or customers;

3) The existence of pre-petition voidable preferences or fraudulent transfers;

4) Unwillingness or inability of management to pursue estate causes of action;

5) Conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor;

6) Self-dealing by management or waste or squandering of corporate assets.

*In re Matter of Intercat, Inc.,* 247 B.R. at 921

■ Although the Court does not find any fraud, dishonesty, incompetence, or gross mismanagement in this case, the Court does find that the Boulis Estate has numerous significant, inherent conflicts of interest that implicate several of the *Intercat* factors listed above. Under Blackburn's management, Debtor's claim against the Boulis Estate has been jeopardized (and may have been lost) by Debtor's failure to timely respond to the curators' objection to Debtors' claim. The failure to timely pursue Debtors' claim against the Boulis Estate evidences a lack of evenhandedness in dealing with insiders or affiliated entities vis a vis other creditors. In addition, the Committee has sued the Boulis Estate to recover fraudulent conveyances. The existence of fraudulent conveyances is another *Intercat* factor bearing on the determination to appoint a trustee.

The enumerated conflicts of interest suffered by the Boulis Estate interfere with its ability to carry out the fiduciary obligations of a debtor in possession. The Boulis Estates' inability to fulfill its fiduciary duties, which is another *Intercat* factor for appointment of a trustee, has the most bearing on the Court's decision. The Boulis Group's claims against, and equity interests in, the Debtors' estates compromise its ability to fulfill its fiduciary obligations to the Debtors' creditors. For example, Blackburn owes conflicting fiduciary duties to the debtor as its manager, and to the Boulis Estate as one of its curators. A sampling of the other con-

flicts include: the fact that the Debtor is the tenant and Boulis entities are the landlords at the Hollywood location; the fact that a Boulis entity currently owes $255,000 to the Debtors' estate under an indemnity provision; and the fact that there exist conflicting claims to use of the trade name "Suncruz" by the Debtor, the Boulis Estate, Paradise of Port Richey (which is 50% owned by the Boulis estate), and the Secured Lenders. The DIP's ability to fulfill its fiduciary obligations to the creditors is understandably called into question by the competing interests of the Boulis Group and its management of the Debtors' estate. Under these circumstances it is highly improbable that Debtor can gain and maintain the confidence of unsecured creditors and the secured lenders in sufficient measure to support rehabilitation. *See In re Concord Coal Corp.,* 11 B.R. 552 (Bankr.S.D.W.Va.1981) (Court has discretion to appoint trustee where loyalty of company management is substantially called into question by his many competing business interests.)

In *In re Marvel Entertainment Group, Inc.,* 140 F.3d 463 (3d Cir.1998), the Third Circuit noted that:

[A]lthough the Icahn interests are technically and officially fiduciaries to all creditors, they would also be placed in an awkward position of evaluating their own indenture and debt claims. Having found that this unhealthy conflict of interest was manifest in the 'deep-seeded conflict and animosity' between the Icahn-controlled debtor and the Lenders and in the lack of confidence all creditors had in the Icahn interests' ability to act as fiduciaries, the district court did not depart from the proper exercise of discretion when it determined sufficient cause existed under § 1104(a)(1) to appoint a neutral trustee to facilitate reorganization. *In re Marvel,* 140 F.3d at 473.

The *Marvel* court noted Icahn's commencement of lawsuits against the debtor's lenders, unconsummated settlements, Icahn's inability to reach consensus, and the fact that Icahn and the lenders were constantly flinging accusations at one another and failed to resolve anything consensually. *Id.* In sum, the court concluded that "[t]he intense and high-stakes bickering between the Icahn interests and the Lenders does not instill confidence that the Icahn interests could fairly negotiate with the creditors to whom they owe these [fiduciary] duties, nor that reorganization will occur effectively." *Id.* at 474.

The Court has similar concerns in this case. Litigation has proliferated between the Boulis Group, the Debtors and the Secured Lenders. This bankruptcy case was filed more than two years ago on June 25, 2001, yet Debtors still have not filed a confirmable plan. Indeed on September 2, 2003, the Court sustained five separate objections to Debtors' proposed plan of reorganization on legal grounds. Debtors clearly cannot fairly negotiate a plan or reorganization, nor will reorganization occur consensually.

In *In re Cajun Electric Power Cooperative, Inc.,* 74 F.3d 599 (5th Cir.1996), on rehearing *en banc,* the court adopted the reasoning of the dissent to the effect that conflicts alone were a sufficient basis to appoint a trustee. 74 F.3d at 600. *Accord, Fiesta Homes of Georgia,* 125 B.R. 321, 325 (Bankr.S.D.Ga.1990)(The "presence of a conflict of interest constitutes cause for removal of the Debtor in Possession from administration of [a] case."); *In re Bellevue Place Associates,* 171 B.R. 615, 623 (Bankr.N.D.Ill.1994) ("inability to fulfill fiduciary duties of a debtor-in-possession due to conflict of interest is itself cause to appoint a trustee").

The mere fact that a party occupies dual roles as an owner and a creditor in a bankruptcy case is clearly insufficient to establish cause for the appointment of a trustee. In this case however, the Boulis entities wear "so many hats" that it may be impossible for them to fulfill the fiduciary duties of a debtor in possession. The Court finds that ample cause exists to appoint a trustee, given the sheer number of conflicting interests of the Boulis Estate, its opportunity and apparent ability to act in its own self interests to the detriment of the Debtors' other creditors, and its inability to reach any sort of reorganization consensus with the principal creditor constituencies.

■ The Committee opposes appointment of a trustee. The Committee argues that, absent a showing of fraud, dishonesty, incompetence or gross mismanagement, a conflict of interest is not sufficient to constitute cause for appointment of a trustee pursuant to § 1104(a)(1). The Committee further maintains that appointment of a trustee is also not appropriate pursuant to § 1104(a)(2) because the cost of appointing a trustee disproportionately outweighs any potential benefit. However given the specific facts of this case, the Court finds that cause does exists to appoint a trustee pursuant to 11 U.S.C. § 1104(a)(1). The application of a strict cost/benefit analysis is not required when appointment of a trustee is made pursuant to 11 U.S.C. 1104(a)(1). *See* Notes of Committee on the Judiciary, House Report No. 95–595. "Once the requisite 'cause' is shown under § 1104(a)(1), a Chapter 11 trustee must be appointed.... [W]hether or not the trustee's efforts will be capped with success is not relevant under § 1104(a)(1). The Court need only decide whether the requisite cause exists." *V. Savino Oil*, 99 B.R. at 528.

■ In the alternative the Committee recommends that the Court appoint a "Responsible Person" in lieu of a trustee, in the event the Court determines that Debtors' management should be replaced. The Committee cites *In re Gaslight Club, Inc.*, 782 F.2d 767 (7th Cir.1986) as support for its recommendation. The Court rejects this recommendation. The Bankruptcy Code expressly provides for appointment of a trustee when a debtor's management is replaced. The Code does not contemplate appointment of a "Responsible Person" to perform the duties of a trustee.

## CONCLUSION

The Court sees no viable alternative to the appointment of a trustee. The Court recognizes that such relief is an extraordinary remedy. However in this case, appointment of a trustee for cause is warranted. It has been more than two years since Debtors filed for bankruptcy protection and to date Debtors have failed to propose a confirmable plan of reorganization. The Boulis Estates' significant and numerous conflicts of interest impede their ability to fulfill their fiduciary duties to all of the bankruptcy estate's creditors.

## ORDER

The Court, having considered the Trustee Motions, the papers filed in opposition, the evidence presented, the matters for which the Court has taken judicial notice, the record in this case, the argument of counsel, and having heard and observed the demeanor of the witnesses, and being otherwise being fully advised in the premises, does hereby:

**ORDER AND ADJUDGE** that the Motion to Appoint Trustee is **GRANTED.**